V. James DeSimone, SBN 119668
vjdesimone@gmail.com
Menaka Fernando, SBN 271380
menakaf@gmail.com
SCHONBRUN DESIMONE SEPLOW
HARRIS HOFFMAN & HARRISON LLP
723 Ocean Front Walk
Venice, California 90291
Telephone: (310) 396-0731
Fax: (310) 399-7040

Douglas Ingraham (SBN 195755)
723 Ocean Front Walk
Venice, CA 90291
(310) 664-0395

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

XUE LU, JIE HAO,

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendant.

**NO. 01-01758-CBM (Ex)**

Assigned to the Honorable Consuelo B. Marshall

**PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

## I. STATEMENT OF FACTS

Plaintiffs Xue Lu ("Xue") and Jie Hao ("Jie") are citizens of the People's Republic of China who were lawfully admitted to the United States on non-immigrant visas and filed applications for political asylum with the Los Angeles Asylum Office of the federal Immigration and Naturalization Service ("Los Angeles Asylum Office").

On or about February 2000 and May 2000, Thomas Powell ("Officer Powell" or "Powell"), an INS asylum officer, interviewed plaintiff Xue and plaintiff Jie respectively. Upon their respective entrances to the hearing office, each plaintiff was met by armed guards who allowed her entry only after she passed through a metal detector. Upon entry into Officer Powell's office, each plaintiff could observe Officer Powell's badge and identification which identified him as an Asylum Officer of the United States of America.

Some days after conducting the office interviews with each plaintiff, Officer Powell made several workday calls to Plaintiffs to discuss their respective applications and requested that they meet with him at their homes to discuss the same. Each plaintiff knew that Officer Powell could interrogate her, arrest her, and have her deported and removed from the United States of America if she did not cooperate with his orders. Officer Powell was acting as an official representative of the United States government and was vested with complete authority to approve or deny each plaintiff's asylum application. Each plaintiff feared that if Officer

Powell ordered her to be arrested and deported back to China that she would face imprisonment, torture, and possibly even death. Accordingly, each plaintiff obeyed Powell's order to meet with him at their respective homes.

Once in plaintiff Xue's home, Officer Powell proceeded to open his portfolio, which contained, in part, Xue's application for political asylum. Before, during, and after the course of Powell's sexual assault on plaintiff and his attempt to extort money from her, he repeatedly told plaintiff that he could help her and that he could either approve or reject her application for political asylum. Powell also told plaintiff that if she paid him, he would approve her request for political asylum. Powell made unwanted sexual advances by kissing Xue's neck and ear, fondling her by touching her breasts and buttocks, and attempting to unzip and remove her pants. Furthermore, Powell told Xue that if she "didn't like this" (referring to his sexually assaultive conduct) he would not approve her case. He stated several times he could either approve or reject her application for political asylum. Once Plaintiff Xue refused Powell's advances and asked him to leave her house, Powell responded that Xue's request for political asylum would be denied. Four days later, Plaintiff Xue received notification that her claim for political asylum had been denied by Officer Powell.

Powell also made repeated calls to Plaintiff Jie related to her application for political asylum before convincing her to meet at her home regarding her application. Prior to meeting Powell, Jie contacted her immigration attorney who

knew, based on his representation of Plaintiff Xue, that Officer Powell had sexually harassed and attempted to extort asylum applicants by using his power and authority to gain entrance into their homes. Prior to June 4, 2000, Jie's counsel contacted the United States Department of Justice in Los Angeles and reported what Powell had done to Plaintiff Xue and his attempts to meet Plaintiff Jie at her residence. The United States Department of Justice met with Jie and her counsel and arranged to have her wired for sound prior to her meeting with Officer Powell. On or about June 4, 2000, Officer Powell arrived at Jie's residence. Officer Powell entered Plaintiff Jie's residence wherein he sat on her couch. Officer Powell then began to tell plaintiff that she had numerous problems with her asylum application. Officer Powell stated that he could either approve or reject plaintiff's application for political asylum. Officer Powell then informed Jie that he could approve her application for political asylum if she paid him $2,000.00. During the course of the meeting, Officer Powell improperly and offensively touched plaintiff on private parts of her body without her consent.

Prior to June 8, 2000, the United States Department of Justice once again arranged for Plaintiff Jie to be wired for sound and provided $2,000.00 to her to give to Officer Powell upon his demand. On or about June 8, 2000, Officer Powell returned to Jie's residence to collect the $2,000.00. During this meeting, Officer Powell again offensively touched plaintiff on parts of her body without her consent.

The "sting" operation confirmed plaintiffs' allegations of extortions and inappropriate sexual contact.

Officer Powell was motivated by the fact that he enjoyed an immense degree of power over each plaintiffs' fate, i.e., her right to freely live in the United States of America as opposed to being deported back to China where each would face imprisonment, torture, and the risk of death. Officer Powell's abuse of his power manifested itself in his illicit demand for both money and sex from each plaintiff. Accordingly, his wrongful acts of extortion and sexual harassment flowed from the exercise of and abuse of his official authority under color of law.

Officer Powell's wrongful conduct was motivated by the abuse of power in which he was vested by the United States of America and the fact that plaintiffs were women, as he sexually harassed only women asylum applicants, and the fact that plaintiffs were Chinese immigrants, taking advantage of them and discriminating against them based on their national origin.

As a direct, proximate, and foreseeable result of the above mentioned acts and omissions of defendants, and each of them, plaintiffs have been caused to and did suffer and continues to suffer personal injuries and physical sickness as well as extreme emotional and mental distress, anguish, humiliation, embarrassment, fright, pain, discomfort, fear, anxiety, depression, and shock to their nervous systems for which they have or may be required to incur medical or psychological treatment, including, in the case of Xue Lu, treatment for a miscarriage.

Plaintiff Xue Lu has and continues to exhibit symptoms of Post Traumatic Stress Disorder as a result of the incident. Plaintiff Jie Hao has and continues to suffer distress from the delay of the processing of her asylum application – which is attributable to Powell's criminal conduct and subsequent criminal trial that lead to his conviction.

## II. CLAIMS AND DEFENSES

### A. Claims.

Claim 1: Violation of California Civil Code § 52.1 Against Defendant United States Of America Pursuant to The FTCA.

Claim 2: Intentional Infliction Of Emotional Distress Against Defendant United States of America Pursuant To The FTCA.

#### 1. Intentional Infliction of Emotional Distress ("IIED")

Each plaintiff is required to prove the following elements to succeed on their respective IIED claims:

(1) Outrageous conduct by the defendant

(2) intention to cause or reckless disregard of the probability of causing emotional distress (3) severe emotional suffering and

(4) actual and proximate causation of the emotional distress.

*See McDaniel v. Gile*, 230 Cal. App. 3d 363, 372 (1991).

**Key evidence**: The testimony of Plaintiff Xue Lu (deposition), Plaintiff Jie Hao and Plaintiffs' mental health expert Dr. Stuart Lustig as well as the Criminal

Trial Verdict, will establish Powell's guilt and the outrageous nature of his conduct, and the emotional distress plaintiffs suffered as a result of their encounters with Powell. Specifically, Plaintiffs will establish that Ms. Lu shows signs of PTSD, a psychiatric syndrome that is entirely consistent with the prior traumatic events that she underwent. Ms. Lu's clinical picture is consistent with that of a trauma survivor, and her symptoms are consistent with the experiences of other vulnerable and repeatedly traumatized asylum seekers and the manifestation of psychopathology among Chinese citizens. Additionally, Ms. Hao's expressions of emotional pain, cultural bereavement, fear and worry, and distress due to a lack of resolution of her legal status is result of her encounter with Powell and the resulting protracted time period before her asylum claim was finally granted.

**2. Violation of California Civil Code § 52.1**

California Civil Code Section 52.1, the "Bane Act," provides relief to persons whose exercise or enjoyment of state or federal constitutional or statutory rights has been interfered with by threats, intimidation or coercion. The elements are:

(1) An attempted act of interference with a legal right;

(2) Accompanied by a form of coercion.

*See Jones v. Kmart Corp.*, 17 Cal.4th 329, 334 (1998); *Venegas v. County of Los Angeles* 32 Cal. 4th 820, 843 (2004). If based on speech alone, a showing must be

made that the speech itself threatens violence against a specific person or group of persons. Cal. Civ. Code § 52.1.

**Key evidence**: Here, using the evidence described above, Plaintiffs will establish that Powell interfered with Ms. Hao's legal rights secured by Article I of the California Constitution and Cal. Civ. Code § 43,[1] among other rights. The Ninth Circuit has said, "On the facts alleged, Powell attempted such interference with the plaintiffs' right to asylum." *Lu v. Powell*, 621 F. 3d 944, 950 (9th Cir. 2010) This Court has already found that section 52.1 established a duty upon Powell to not "interfere" with Plaintiffs' rights under California law and that the intentional tort exception does not bar relief because demands for sexual favors and money in exchange for approving their asylum applications do not in and of themselves constitute an assault or a battery." (May 3, 2011 Order, at *6).

**B. Defenses and Plaintiffs' Response.**

**1. Plaintiffs' Claims Barred By Intentional Tort Exception.**

Defendant argues that Powell's conduct against Plaintiffs constitutes assault and battery and is therefore barred by the intentional tort exception of the FTCA.

<u>Plaintiffs' Response</u>: The Ninth Circuit has already spoken on this issue. Powell, acting as an Officer of the United States, asserted his authority over her and made it clear that the fate of her asylum application was in his hands. *See Lu*, 621

[1] Article I, section I of the California Constitution provides people the right to "enjoy[] and defend[] life and liberty, possess[], and protect[] property, and pursu[e] and obtain[] safety, happiness, and privacy." Cal. Civil Code section 43 provides that "every person has . . . the right of protection from bodily restraint of harm, for personal insult, from defamation, and from injury to his personal relations."

F.3d at 949 ("Powell abused his powers for his own benefit.") Defendant attempts to circumvent this Court's ruling by making the circular argument that a sexually violent threat that can be carried out constitutes "assault," and is thus, barred by the intentional tort exception of the FTCA. This argument lacks merit because this Court has already found that the demands in and of themselves do not constitute an intentional tort, as contemplated under the FTCA, and Defendant's argument should be rejected. (May 3, 2011 Order, at *6).

**2. Consent.**

Defendant argues that Ms. Hao consented to Powell's wrongful conduct against her.

Plaintiffs' Response: Here, Ms. Hao cooperated with the Department of Justice to the extent that she permitted videotaping and monitoring of the meetings and phone calls with Powell. Defendant's contention that Ms. Hao consented to being "subjected to Officer Powell's solicitations" (Def. Mot, at 10), thereby outright granting Powell blanket approval to engage in acts of extortion and sexual violence over her is an incredible and far-fetched conclusion. Powell's illegal conduct exceeded the scope of Ms. Hao's consent to cooperate with the Department of Justice by allowing them to do surveillance. The mere fact that Ms. Hao decided to cooperate with the government does not vindicate Powell and protect Defendant from liability.

## III. Evidentiary Issues

The parties are in the process of meeting and conferring about the foundation of documentary evidence. Plaintiffs object to the use of any hearsay unreliable evidence Defendants are expected to use to establish the false allegation that Ms. Lu committed marriage fraud. Further, as discussed in Plaintiffs' Opposition to Defendant's Ex Parte Application to Depose Winfeld Scott Biggs Before The Close of Trial, Plaintiffs object to the taking of Mr. Biggs' deposition at this late stage in the proceedings.

## IV. Jury Trial

Plaintiffs are not seeking for any claims or issues go to a jury.

## V. Attorneys' Fees

Plaintiffs can recover attorney's fees under the EAJA (28 U.S.C. § 2412(b)) and costs under the EAJA (28 U.S.C. § 2412(a) so long as he can show "bad faith" conduct which gave rise to the suit. *American Hosp. Ass'n v. Sullivan*, 938 F.2d 216, 219 (D.C. Cir. 1991). Bad faith conduct "giving rise to the lawsuit may be found where 'a party, confronted with a clear statutory or judicially-imposed duty towards another, is so recalcitrant in performing that duty that the injured party is forced to undertake otherwise unnecessary litigation to vindicate plain legal rights.'" *Id.* at 220 (citing Fitzgerald v. Hampton, 545 F. Supp. 53, 57 (D.D.C. 1982)). An award of attorneys' fees is appropriate where "the party has been the victim of unwarranted, oppressive, or vexatious conduct on the part of his opponent and has been forced to sue to enforce a plain legal right." *American Employers Ins.*

*Co. v. American Sec.Bank*, 747 F.2d 1493, 1502 (D.C. Cir. 1984).

**VI. Abandonment of Issues**

Plaintiffs have not abandoned any claims pleaded in their Fourth Amended Complaint.

DATED: January 7, 2012

SCHONBRUN DESIMONE SEPLOW HARRIS HOFFMAN & HARRISON LLP

V. James DeSimone
Menaka N. Fernando
Attorneys for Plaintiffs